

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00710-CV

**IN THE INTEREST OF J.K.L.**, J.A.L., and J.C.L., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-00056
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Karen Angelini, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed:  February 15, 2017

AFFIRMED

Appellant J.M.L. appeals the trial court's order terminating his parental rights to his children J.K.L, J.A.L., and J.C.L.[1]  J.M.L. asserts the evidence is neither legally nor factually sufficient for the trial court to have found by clear and convincing evidence that terminating his parental rights is in his children's best interests.  Having reviewed the evidence, we conclude it is legally and factually sufficient to support the findings, and we affirm the trial court's order.

## BACKGROUND[2]

In August 2015, the police responded to a report of domestic violence at the children's home.  The police learned that the children's mother and her boyfriend had been arguing, and a

---

[1] To protect the minors' identities, we refer to the father and the children using aliases.  *See* TEX. R. APP. P. 9.8.
[2] Because J.M.L. is the only appellant, we limit our review of the facts to those that pertain to J.M.L. or the children.

glass TV stand in the bedroom was broken. The police found the youngest child—twelve months old—lying on the bed with shards of glass around the child; the child's mother had bruising on her arms.[3] The Department received a report regarding the family violence, and the Department began family-based safety services. On November 9, 2015, while he was on parole, J.M.L. was arrested for a separate offense and incarcerated.[4] Later, the children's mother was incarcerated on a drug charge, and the Department moved for temporary managing conservatorship of the children; it placed them with their great-grandmother. Several months later, after one of the children sustained suspicious physical injuries, the Department developed reasons to believe the children were being physically abused in the great-grandmother's home, and it placed the children in a foster home.

Because the children's mother failed to participate in services and J.M.L. remained incarcerated, the Department petitioned to terminate the parental rights of the mother and J.M.L. The trial court held status and permanency hearings, and eventually a trial on the merits.

At a bench trial on October 11, 2016, J.M.L.—who was incarcerated—appeared by audio and was represented by counsel. After the attorneys examined the witnesses, the trial court found, with respect to J.M.L., that J.M.L. met four statutory grounds for termination and that termination of his parental rights was in the children's best interests. The trial court terminated J.M.L.'s parental rights, and he appeals. He does not challenge the trial court's findings on the statutory grounds. Instead, he asserts the evidence is neither legally nor factually sufficient to support the trial court's finding that terminating his parental rights is in his children's best interests.

### EVIDENCE REQUIRED TO TERMINATE PARENTAL RIGHTS

If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the

---

[3] At the time of the incident, the children were 47 months, 32 months, and 12 months old.
[4] At the time of trial, J.M.L. was still incarcerated.

grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code, and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2015); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *D.M.*, 452 S.W.3d at 472.

### STANDARDS OF REVIEW

### A.    Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

### B.    Factual Sufficiency

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266; *accord H.R.M.*, 209 S.W.3d at 108.

## BASES FOR TERMINATION

### A.     J.M.L.'s Course of Parental Conduct

The trial court found by clear and convincing evidence that J.M.L.'s acts or omissions were grounds for termination under subparagraphs (D), (E), (N), and (O) of section 161.001(b)(1). *See* TEX. FAM. CODE ANN. § 161.001(b)(1).[5]  On appeal, J.M.L. does not challenge the trial court's statutory grounds findings.

### B.     Best Interests of the Children

Instead, J.M.L. challenges the sufficiency of the evidence that terminating his parental rights is in his children's best interests. *See id.* § 161.001(b)(2).  We briefly review the law pertaining to determining the best interests of the children.  The factors a court uses to ascertain the best interest of a child may include the following:

> (B)  the emotional and physical needs of the child now and in the future;
> (C)  the emotional and physical danger to the child now and in the future;
> (D)  the parental abilities of the individuals seeking custody;
> . . .

---

[5] The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX. FAM. CODE ANN. § 161.001(b).  Here, the trial court found J.M.L.'s conduct met the following criteria or grounds:

> (D)  knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> (E)  engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> . . .

> (N)  constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:
> (i) the department has made reasonable efforts to return the child to the parent;
> (ii) the parent has not regularly visited or maintained significant contact with the child; and
> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]

> (O)  failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

*Id.* § 161.001(b)(1)(D), (E), (N), and (O).

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors); *see also* TEX. FAM. CODE ANN. § 263.307(b) (listing statutory factors for "determining whether the child's parents are willing and able to provide the child with a safe environment").

Applying each standard of review, we examine the evidence pertaining to the best interests of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *E.N.C.*, 384 S.W.3d at 807; *J.F.C.*, 96 S.W.3d at 284.

### EVIDENCE OF BEST INTERESTS OF THE CHILDREN

The one-day bench trial on the Department's petition concerned the three children, their mother, and J.M.L., the children's father. The trial court heard testimony from the Department caseworker, the foster mother, and J.M.L., and recommendations from the children's attorney-ad-litem and the CASA volunteer. Because J.M.L. is the only appellant, we relate only the witnesses' testimony that pertains to J.M.L. or the children.

**A. Department Caseworker's Testimony**

Cynthia Suarez, the Department's caseworker, testified she has been the caseworker for the entirety of the case beginning with the children's removal from their home on January 8, 2016.

She first met with J.M.L. at the Comal County Jail where he was incarcerated. She reviewed a previously prepared family service plan with J.M.L. and he signed it. J.M.L. was unable to complete the service plan because the Comal County Jail does not offer services to inmates. The jail would have allowed J.M.L.'s children to visit him, and she mentioned that to J.M.L. She did not arrange for the children to visit him, and he did not ask her to see his children.

J.M.L. asked her about the children, but he did not send them letters, and he had no contact with the children during the pendency of this case.

Initially, the children were placed with their great-grandmother. They lived there for several months, but during that time, the youngest child's daycare provider reported injuries to the child's genital area including lacerations and bruises. The Department investigated and found it had reason to believe the injuries were due to physical abuse. It removed the children from the great-grandmother's home and placed them in a foster-to-adopt home.

The children's foster home is in a rural area with "a lot of property with . . . horses and chickens and deer." The children are able to play outside, and "[t]hey seem to be doing very well."

The children's father has been incarcerated during the entire pendency of this case, "he is not getting out anytime soon," and he may be transferred to Bexar County Jail after he is released from the Comal County Jail. Because he is incarcerated, J.M.L. has no present ability to care for the children. He has not provided them any support, he has not written to them, and he has not asked to see them. For these reasons, she recommends J.M.L.'s parental rights be terminated.

### B.     Foster Mother's Testimony

The foster mother testified that the children are doing wonderfully; they are all in school or daycare. The children are making new friends, and the oldest child has bonded with her own six-year-old son. The children have lots of playtime together, they are eating and sleeping well, and she has observed very few negative behaviors. The children are on track in their school and daycare settings. Because two of the children came with caps on their teeth, she made medical and dental appointments for their care. She and her husband want to adopt all three children.

### C.     J.M.L.'s Testimony

J.M.L. testified he is the father of all three children.  He has never been accused of physically abusing or neglecting his children.  Before he was incarcerated, he saw his children every day.  He bought them clothes and otherwise provided for them.

While he was on parole for a separate offense, on November 9, 2015, he was arrested and charged with felony possession of a controlled substance—methamphetamine.  He was incarcerated in the Comal County Jail where he remains incarcerated.  He signed the service plan, but at first he did not know his children could visit him.  Later, his caseworker told him his children could visit, but "she was supposed to let me know, and nothing."  He has not seen his children since he has been incarcerated.  If he doesn't get sent back to prison, he wants to care for his children.

### D.     Attorney Ad Litem's Recommendations

Attorney Sharon Thorn, the children's attorney ad litem, recommended that J.M.L.'s parental rights be terminated.  Thorn opined that by his actions, J.M.L. has shown he cannot be a parent who can take care of the children.  His release date from Comal County Jail is uncertain and he is likely facing further incarceration in Bexar County Jail.

### E.     CASA Volunteer

The trial court accepted the CASA volunteer's report.  The report notes J.M.L. is presently incarcerated in Comal County Jail, he does not yet have a release date, and he "still needs to serve time in Bexar County."  J.M.L. has written to the caseworker about his concerns for his children and has provided family members' names for alternate placement options, but presently there does not seem to be any good option for a familial placement for the children.

**J.M.L.'S PARENTAL RIGHTS**

The trial court heard testimony pertaining to the children's best interests, and the trial court was the "sole judge[] of the credibility of the witnesses and the weight to give their testimony." *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *H.R.M.*, 209 S.W.3d at 108.

The trial court heard that while J.M.L. was on parole for one drug offense, on November 9, 2015, he was arrested and charged with felony possession of a controlled substance—methamphetamine—in Bexar County. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H), (I)). J.M.L. has been incarcerated in the Comal County Jail since his most recent arrest, but he has not yet gone to trial on the felony possession charge. His eventual release date is uncertain and unknown.

While J.M.L. has been incarcerated, he has not been able to protect or provide for his children for almost one year. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)). Although the caseworker advised him that his children could visit him in the Comal County Jail, he did not ask for them to visit him. *See id.* (factors (B), (D), (H)). He did not write them or otherwise contact them since he was incarcerated. *See id.* (factors (B), (D), (H), (I)). J.M.L. has no present ability to provide for his children, and it is unknown when and if he might become available to provide for them. *See id.* (factors (B), (C), (D), (H)). J.M.L.'s arrest for a felony drug offense while on probation for a previous drug offense could indicate his future inability to provide for the children's future emotional and physical needs and safety. *See D.M.*, 452 S.W.3d at 472 ("A fact finder in a termination case may permissibly infer that a parent's future conduct may well be measured by recent deliberate past conduct as it relates to the same or a similar situation.").

The three young children are very happy in their foster home. They have lots of room to play; animals to watch, care for, and play with; and another child in the family to bond with. The oldest of the three children has bonded very well with the foster family's child. All three of the

children are well-adjusted in, and making new friends at, school and daycare. The foster family has already arranged for medical and dental care to meet the children's needs, and the husband and wife want to adopt all three children. *See Holley*, 544 S.W.2d at 372 (factors (D), (G)).

Reviewing the evidence under the two standards, we conclude the trial court could have formed a firm belief or conviction that terminating J.M.L.'s parental rights to his children was in the children's best interests. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27; *see also* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (12). Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's order. *See J.F.C.*, 96 S.W.3d at 266; *C.H.*, 89 S.W.3d at 27.

## CONCLUSION

On appeal, J.M.L. does not challenge the trial court's findings that his course of conduct comprised multiple bases to terminate his parental rights. Instead, he argues the evidence is neither legally nor factually sufficient to support the trial court's finding by clear and convincing evidence that terminating his parental rights is in his children's best interests.

Having examined the evidence under the applicable standards of review, we conclude the evidence pertaining to the trial court's findings is both legally and factually sufficient for the trial court to have found by clear and convincing evidence that terminating J.M.L.'s parental rights to his children is in the children's best interests. Therefore, we affirm the trial court's order.

Patricia O. Alvarez, Justice